[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 576 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 577 
There was evidence, on the part of the plaintiff, free from objection, amply sufficient to require the submission to the jury of the question, whether the defendant, in making the purchase from Cooley, was acting as the agent of the plaintiff, or gave the plaintiff so to understand. The motion for a nonsuit was, therefore, properly denied. The verdict establishes that the jury found in favor of the plaintiff on this issue, and the only questions now before us are, whether the court erred in the admission of evidence which may have influenced the finding of the jury, or in the instructions given them as to the effect of the evidence.
The objection, that oral proof of the agency was inadmissible, as contradictory of the writings executed between the plaintiff and defendant, is not tenable. These writings, it is true, purported to establish a sale from the defendant to *Page 579 
the plaintiff. But they did not preclude the plaintiff from showing that the purchase by the defendant from Cooley was, in fact, for the account of the plaintiff, and that, as a mode of consummating the transaction, the defendant took the title from Cooley and transferred it to the plaintiff. The legal effect of the instruments themselves, as between the parties thereto, was not varied by this proof. The proof related only to the accountability of the agent to his principal in respect to the price paid for a purchase made by the agent, formally, in his own name, but, in fact, for the benefit of the principal, and by the agent transferred to the principal. If, on such a transfer, the agent, by fraudulently misrepresenting or suppressing the sum actually paid for the property, succeeded in obtaining a larger sum from his principal, the latter was not concluded by the form of the papers from showing the fraud when discovered.
The exceptions principally relied upon on the argument are those which were taken to the admission of evidence that prior to the transaction in question the defendant had, on various occasions, been employed by the plaintiff, as his agent, to make purchases of lands, and that the defendant had acted as such agent, and received compensation for his services.
The admission of this evidence was not, as we think, error, for which the judgment should be reversed. In the first place, this prior employment and agency were alleged in the complaint, and expressly admitted in the answer. It is difficult to perceive how the defendant could be prejudiced by proof of facts which were admitted upon the record. In the next place, the evidence was, we think, admissible, for the purpose of aiding in the interpretation of the communications, written and oral, between the plaintiff and defendant. For instance, in construing the letter of June 14, 1866, from the defendant to the plaintiff, in which the defendant states, in respect to the purchase in question: "I have this day contracted to purchase of Calvin Cooley his 6,961 acres, etc., for which I will get you his quitclaim deed, signed also by his *Page 580 
wife, in the payment of $30,000," etc. The fact that the defendant was in the habit of acting as agent for the plaintiff for the purchase of similar lands, for a stipulated compensation, was a circumstance which might legitimately be considered in determining whether, from this communication, the plaintiff had not the right to understand, and whether the defendant did not intend that the plaintiff should understand, that the contract with Cooley had been made by the defendant in his capacity of agent for the plaintiff. Such a communication, coming from a stranger, might bear a very different interpretation from that of which it was susceptible when made by one who had habitually acted as agent for the person to whom it was addressed, and the rate of whose compensation for his services in such matters had been fixed by agreement; especially in view of the further fact testified to by the defendant, that his contract with Cooley was so drawn as to bind Cooley but not the defendant, and that he had thus secured the option of making the purchase. In like manner, the relation existing between the parties had a bearing upon the interpretation of the conversations between the plaintiff and defendant, as testified to by the former, in which, as the plaintiff states, he told defendant that he thought he (defendant) could do better with Cooley than he (plaintiff) could, and named to defendant the highest price he (plaintiff) would be willing to pay for the land. It is true the defendant denies these conversations, but, nevertheless, the plaintiff had the right to lay the evidence of them before the jury, together with all facts tending to throw light upon their meaning. The question of the veracity of the respective parties was for the jury.
So of the evidence in regard to the rate of compensation established between the parties. This not only tended to make more clear the nature and terms of the agency, but to explain some of the expressions which, as plaintiff testifies, were used at the time of closing the transaction now in controversy. The plaintiff testifies, in substance, that when he first made arrangements with defendant to make purchases *Page 581 
of land for him, the defendant said the trouble was the same on a small parcel as a large one, and agreed to do the business for $100 per lot, and that the plaintiff had paid him at that rate for making purchases.
This statement is contradicted by the testimony of the defendant. He testifies, in substance, that the plaintiff paid him ten cents per acre for purchasing land; that he charged according to the assessed acres; that the lots were called 1,000 acre lots; that there was an understanding between him and plaintiff that when the lot contained a fraction over 1,000 acres he did not charge for the fraction, and that when it fell short he charged for the 1,000 acres, and that the gross amount of commissions received by him from plaintiff was about $3,500.
Assuming the plaintiff's version to be true, and that the stipulated commission was $100 per lot, without regard to its size, this fact would have an important bearing upon the effect to be given to the conversation at Mr. Hammond's office, when the plaintiff signed the contract to take the land at $30,000. The plaintiff testifies that defendant then suggested that there should be some consideration to make the contract binding; that he (plaintiff) replied: "If you want your fee I will give it you;" that Mr. Hammond then drew a check for $100, which plaintiff signed, and gave to defendant. This conversation would be quite unintelligible but for the evidence of the previous dealings and relations between the parties, and the stipulated rate of compensation; but in view of these facts, the story, if true, tends strongly to show that the defendant assumed to be acting in the matter as agent for the plaintiff, and accepted from him the usual compensation for his service. This directly conflicted with the defendant's claim that he made the purchase on his own account, and was entitled to and did resell the property to the plaintiff at a profit of $15,000.
We think that the evidence of the previous dealings between the parties, and of the stipulated rate of compensation, was properly admitted for the purpose of explaining *Page 582 
their acts and communications with each other in reference to the transaction now in controversy. It is true that when the testimony was admitted, the facts which render it relevant had not fully appeared. But, inasmuch as evidence of them was afterward introduced, the question became one simply of the order of proof.
The more serious question in the case is that which arises upon the charge of the judge in regard to the effect of this evidence. It is conceded, and the court so charged, that the evidence failed to show such a general agency, on the part of the defendant, as to preclude him from purchasing the land in question on his own account, in the absence of proof of a special agency in respect to the purchase of this land. The plaintiff was, therefore, bound to show, by competent evidence, that he had employed the defendant, as his agent, to purchase this particular land, or that the defendant pretended to the plaintiff to have made the purchase for his account, and by this means obtained from the plaintiff a profit on the purchase. In the absence of proof to this effect, the fact that the defendant had, on numerous prior occasions, acted as the agent of the plaintiff in the purchase of land would not have been in and of itself competent for the purpose of establishing the relation of principal and agent in respect to the particular purchase in question. To give that effect to the prior transactions between the parties would result in subjecting the defendant to the liability of accounting to the plaintiff for every purchase of land which the defendant might make. This was not the nature of the arrangement between them. The court charged, and correctly, that the jury must be satisfied that the relation of principal and agent existed between the parties, with respect to the particular transaction in controversy. The testimony bearing upon this question was conflicting. The parties to the action both appeared as witnesses, and contradicted each other. Other witnesses also gave conflicting evidence. The court charged the jury as follows: "You have a right to look at the pre-existing relation between the parties, as bearing upon the *Page 583 
probabilities, as to which one of these parties has truthfully related to you the agreement existing between them concerning the conveyance and purchase of this property." This portion of the charge was excepted to, and we think the exception was well taken. We have already expressed the opinion that the evidence, as to the pre-existing relations between the parties was relevant, for the purpose of interpreting their acts and communications as the jury should find them to have taken place. But the existence of these relations did not tend to prove which party told the truth in respect to the particular transaction, or whether or not such statements as were testified to on the one side and controverted by the other, were or were not in fact made. Evidence of the relations existing between the parties was, for instance, admissible, for the purpose of showing what idea the letter of June fourteenth was calculated, and intended by the writer, to produce, and did produce, upon the mind of the plaintiff. But, on the other hand, the defendant testified to subsequent oral communications with the plaintiff prior to the consummation of the transaction, which, if defendant's testimony were true, should have dispelled any erroneous impression the letter was calculated to produce, and disclosed to the plaintiff the attitude of the defendant, as a principal, dealing for his own advantage, and making his own price for property which he proposed to sell to the plaintiff. The fact that the defendant had, on other occasions, acted as special agent for the plaintiff in the purchase of lands, did not, legitimately, tend to discredit the statement of the defendant that, on this occasion, he avowed himself to be acting in his own interest and on his own account, or to confirm the statement of the plaintiff, that he had employed the defendant to make this specific purchase. It was for the jury to determine from the testimony of the witnesses and the credibility to which, in their judgment, these witnesses were respectively entitled, what was actually said and done between the parties, with reference to the particular transaction in question. Evidence that in former purchases of land the defendant had acted as *Page 584 
agent for the plaintiff did not, legitimately, tend to solve the disputed question, which of the parties told the truth in respect to the particular transaction under investigation. The authorities cited by the learned counsel for the respondent do not establish that the facts accompanying one transaction may be adduced as evidence that similar facts existed in another, but only that where the facts are the same in several contemporaneous transactions, the intent may be gathered from the coincidence of these facts with the intent alleged. These are generally cases of false representations, purchasing goods with intent not to pay for them, passing counterfeit money, etc. Other cotemporaneous acts of a similar character have been permitted to be shown on the question of intent or scienter, but in none of these cases was it permitted to be shown that the party made false representations in one case, for the purpose of establishing that he made like representations in another, or that it was probable that he did. Nor can the fact of previous offences be considered as bearing upon the probability of the accused having committed the offence charged.
It may be that the verdict would have been the same had the instruction, which we deem erroneous, not been given. But this consideration is not sufficient to justify us in affirming the judgment. In a case where the evidence was so conflicting as in this, we have no right to assume that the instruction excepted to had no weight in bringing the jury to a conclusion.
On this exception we deem it necessary to reverse the judgment and order a new trial, with costs to abide the event.
All concur.
Judgment reversed. *Page 585