HEATH v. WEST ET AL.

CONTRACT.—*Lease.*—*Promissory Note.*—*Failure of Consideration.*—*Estoppel.* —*Waiver of Damages.*—*Pleading.*— Action by C. against the maker, on a promissory note executed by A. to B., and assigned to C. Answer by A., by way of counter-claim, setting up a written contract by which B. leased to A. certain land, for a term of five years, for an annual rent of $1,400; that notes were given by A. for the yearly instalments of rent, and that

the note sued on was the third of the series ; that, by the contract, B. agreed, but failed, to enclose the land with a good and substantial fence ; that A. had paid the first two of said notes, but that the rental value of the land was greatly decreased by the failure of B. to construct such fence. Two paragraphs of reply were filed: First, that before A. entered upon the land B. had enclosed it with what he intended for such a fence as provided for ; that A. took possession of the land with a full knowledge of the character of the fence, and used said land, and paid the first two notes given for yearly rent, and is estopped from claiming any failure of consideration ; Second, that B. employed A. to construct said fence enclosing said land, and furnished the materials for constructing a good and substantial fence ; that A. informed B. that he had constructed such a fence, and took possession of the land under said contract, etc.

*Held,* that both paragraphs of reply set up facts showing an acceptance by A., as sufficient, of the work alleged to have been done by the payee of the note, and a waiver of any claim for damages on account of any supposed deficiency in said work.

SAME —*Evidence.—Occupancy of Land.—Acceptance.—*Under the above contract, the mere occupancy of the land by A. would not be sufficient to show an acceptance by him of the work done by B. as a full compliance with the contract, but it would be a circumstance tending to show such acceptance, and proper to be considered by the jury in connection with other evidence.

SAME.—*Parol Evidence.— Written Agreement.—*The lease, in such case, being silent as to what or how much fencing would be necessary to inclose the land in the manner contemplated by the parties, it was not error to permit B. to testify that he and A. went over the land, before the lease was executed, and agreed as to what fences would have to be built.

SAME.—*Question for Jury.—*In such case, it was for the jury to determine what would constitute a good and substantial enclosure of the land.

SAME.— *Construction of Contract —Admission against Interest.—*Each party must be held to the construction of a contract which his own conduct has placed upon it, when such conduct operates as an admission against his interests.

SAME.—*Explaining Written Contract by Parol Evidence.—*It is not a general rule of law that oral evidence may be considered by a jury to explain a written contract. That can only be done in a special and limited class of cases.

PRACTICE.— *Affidavit for New Trial.—Bill of Exceptions —*Affidavits in support of a motion for a new trial are not a part of such motion, but only evidence in support thereof, and can only be made part of the record, on ppeal to the Supreme Court, by a bill of exceptions.

Heath v. West et al.

SUPREME COURT.— *Weight of Evidence.*—Where there is evidence tending to sustain a verdict, the Supreme Court will not disturb it.

INSTRUCTIONS.—For instructions at length see opinion.

From the Benton Circuit Court.

*S. P. Thompson,* for appellant.

*H. W. Chase, F. S. Chase* and *F. W. Chase,* for appellees.

NIBLACK, J.—The complaint in this case was upon a promissory note for one thousand and four hundred dollars, executed by the defendant, Joseph Heath, on the 28th day of July, 1874, to one John W. Heath, payable on the 1st day of January, 1878, and assigned to the plaintiffs, George E. West and Hiram W. Chase.

The defendant answered, by way of counter-claim, that, on the day of the date of the note, he and the said John W. Heath entered into a written contract, whereby the latter leased to the former about one thousand and fifty acres of land in Benton county, for five years from March 1st, 1875, for the sum of one thousand four hundred dollars per year, for which notes were given payable on the 1st day of January in the years 1876, 1877, 1878, 1879 and 1880, respectively; that the note sued on was the third one of the series of notes thus given; that, by the terms of the lease, the lands embraced in it were to have been enclosed, by the said John W. Heath, with a good substantial fence, so that said lands could be pastured on and after the 1st day of May, 1875, it being understood and agreed that the fence should be maintained by the defendant, and, at the expiration of the lease, surrendered by him in as good condition as he might receive the same, natural wear and decay excepted; that the said John W. Heath had failed to enclose such lands with a good and substantial fence; that, if the lands had been so enclosed, as it was agreed they should be, their rental value would have been two thousand dollars per year, but, as the same were enclosed, they could not be fully used and occupied, and their rental

value did not exceed one thousand dollars per year for the years 1875, 1876 and 1877; that the defendant had paid the two notes given for instalments of rent due January 1st, 1876, and January 1st, 1877, respectively, and that the defendant had sustained damages up to that time, by reason of the failure of the said John W. Heath to fence the said lands as he had agreed to do, in the sum of three thousand dollars. Wherefore the defendant demanded judgment.

The plaintiff replied in three paragraphs.

First. In general denial.

Second. That between July 14th, 1874, and March 1st, 1875, said John W. Heath enclosed said premises "with a fence, for the purpose of enabling the defendant to pasture the lands; that the said John W. Heath designed, intended and built said fence as and for a good, substantial fence; that defendant, on the 1st day of March, 1875, entered upon and took possession of the premises enclosed by said fence, with full knowledge of the quality, character, material and mode of construction thereof, and accepted said fence as being a good, substantial fence, as required by the terms of the lease, and pastured said lands with cattle during the grazing seasons of the years 1875, 1876 and 1877, and paid the first two $1,400 notes, due for rent January 1st, 1876, and January 1st, 1877. Wherefore defendant was estopped from claiming any failure of consideration."

Third. That subsequent to the execution of said lease, and long prior to March 1st, 1875, "said John W. Heath employed said defendant to superintend the construction of fences on the lands described in said lease, said fences to be erected according to the agreement on the part of said John W. Heath to enclose said lands contained in said lease; that said John W. Heath, for the purpose of carrying out his part of the agreement contained in said lease, delivered and furnished to said defendant a large and suf-

ficient quantity of all kinds of materials required or necessary to construct said fences, and said defendant accepted said employment and received said materials long prior to said 1st day of March, 1875, and, shortly after having received said materials, informed said John W. Heath that he, the said defendant, had constructed on said premises good and substantial fences as required by said lease; that said defendant, on the 1st day of March, 1875, entered upon and took possession of the premises, with full knowledge of the extent and character of the fences on said premises, and pastured said premises with his cattle, during the grazing seasons of 1875, 1876 and 1877, and afterward, to wit, on the 1st day of January, 1876, paid the note first described in said lease, for the sum of $1,400, and afterward, on the 1st day of January, 1877, paid the note secondly described in said lease, for the sum of $1,400; that said John W. Heath relied upon the statement of said defendant, that he constructed said fences as required by said lease, and upon the fact that said defendant had entered upon and occupied said premises as aforesaid, without objection as to the extent or condition of said fences, and always believed that said premises were enclosed with good and substantial fences as required by said lease. Wherefore plaintiffs said that the defendant was precluded and estopped from setting up or maintaining his alleged defence."

The defendant demurred severally to the second and third paragraphs of the reply, but the court held both of those paragraphs to be sufficient.

There was a verdict for the plaintiffs, but for about seventy-five dollars less than was claimed by them, and, over a motion for a new trial, judgment was rendered in their favor on the verdict.

Errors are assigned upon the overruling of the demurrer to the second and third paragraphs of the reply, and upon the refusal of the court to grant a new trial.

We see no objection to the substantial sufficiency of either the second or third paragraph of the reply. Both of those paragraphs set up facts showing an acceptance, as sufficient, of the work alleged to have been done by the payee of the note in enclosing the leased lands, and a waiver of any claim for damages on account of any supposed deficiency in such work. Their sufficiency is, we think, fairly sustained by the case of *Hunter* v. *Leavitt*, 36 Ind. 141.

Over the objection of the defendant, John W. Heath, the payee of the note, was permitted to testify that he and the defendant went over the leased lands together, before the lease was executed, and agreed as to what fences would have to be built in order to properly enclose the lands.

It is insisted that this was permitting oral testimony to be given as to a matter which was afterward reduced to and embraced within a writing, and was hence an error for which a new trial ought to have been granted. But the lease, which was in evidence, was entirely silent as to what particular fences, or as to how much fencing, it would be necessary to build so as to enclose the lands in the manner contemplated by the parties to it. The oral testimony complained of did not, therefore, relate to a matter covered by or included in the lease.

It is also insisted that a new trial ought to have been granted because of newly-discovered evidence.

The defendant's claim of newly-discovered evidence purports to have been supported by his own affidavit and the affidavit of one James Emerson. These affidavits are copied into the record as a part of the motion for a new trial, but they are not included in, or in any manner verified by, any bill of exceptions, nor have they been otherwise made a part of the record. They are, therefore, in legal contemplation, not in the record, not having in any way been lawfully made a part of it. Such

affidavits are · not a part of the motion for a new trial, but only evidence used, or to be used, in support of such motion. Hence, they can only be made a part of the record in the same manner as any other written evidence in the cause can be so made.

The court, upon its own motion, gave to the jury seven written instructions, the 4th, 5th and 6th of which were excepted to by the defendant.

The instructions objected to were as follows':

" 4th. The defendant's defence in this case is, that John .W. Heath did not enclose the lands with a fence, according to the contract. Upon the issue thus made by the defendant, the burden of the proof is upon him. If, however, he has shown by the preponderance of evidence, that John W. Heath had not, on the 1st of March, 1875, enclosed said lands with a good, substantial fence, he will be entitled to his damages in this case, to be deducted from the note in suit, unless the plaintiffs have shown by the preponderance of evidence, that John W. Heath enclosed or made arrangements for the enclosure of the lands, so that such enclosure or the arrangements for such enclosure were accepted by the defendant, as a full compliance of the contract.

" 5th. If the jury find from the evidence that John W. Heath, on or before March 1st, 1875, enclosed the lands with a substantial fence, or if you find that although he did not so enclose said lands, but enclosed or arranged to enclose the same in a manner which the defendant accept· ed as full compliance with the contract, your verdict should be for the plaintiffs for the full amount of principal, interest and attorney's fees due on the note.

" 6th. But if you find from the evidence that said John W. Heath did not, by March 1st, 1875, enclose the land with a good, substantial fence, and that the defendant did not accept what was done by said John W. Heath, with

reference to said enclosure, as a compliance with the contract, the defendant will in this case be entitled to have his damages, if any, occasioned by John W. Heath's failure to comply with said contract, deducted from the note sued upon."

It is objected that all of these instructions improperly failed to explain what may have amounted to an " acceptance " by the defendant of the work done by John W. Heath in enclosing, or attempting to enclose, the leased lands, but we are unable to see any good reason for that objection. The instructions complained of appear to us to have been free from any fatal obscurity in their language, and fairly within the issues submitted to the jury.

At the request of the plaintiffs, the court further instructed the jury as follows:

" 1st. If you find from a fair preponderance of the evidence, that, after the making of the lease copied in answer, and before the 1st day of March, 1875, John W. Heath built or caused to be built fences, which, with fences then upon the boundary lines of the lands, enclosed the same, and that said fences so built and those already on the lands were intended to be and designed for good and substantial fences, and in compliance with the lease, and the said defendant, with a full knowledge of the character and quality of the fences which thus enclosed said lands, accepted said fences as being good and substantial, and as being in compliance with the lease, and afterward pastured the lands, except what he planted in corn, with cattle during the grazing seasons of 1875–6–7, and paid the two notes given on account of the rent due January 1st, 1876 and 1877, being for $1,400 each, then such acceptance and pasturing the lands and payment of rent preclude the defendant from defeating any part of the note in suit, and your verdict should be for the full amount thereof, with the interest thereon since maturity, and ten per cent. attorney's fees, as provided in said note.

" 2d. If you find from a fair preponderance of the evidence that, at the time of and soon after the making of the lease in July, 1874, the said John W. Heath and the said defendant entered into a contract, whereby the said John W. Heath was to furnish the lumber and nails, and the said defendant was to purchase the posts and haul the lumber and build the fences agreed upon as necessary to comply with the contract, and if the evidence further shows that the said John W. Heath complied with his contract, and did furnish the lumber and nails and pay the defendant for the posts, hauling the lumber and building the fence, before the 1st of March, 1875, and that the defendant entered into possession of the lands in March, 1875, and accepted the fences and pastured the lands, except what was in corn, and paid the first two notes given for the rent, then the defendant is precluded by such acts from defeating any part of the note described in the complaint, and your verdict should be for the full amount of the note and interest and attorney's fees."

The defendant excepted to both of these instructions, and it is objected generally here that they did not properly construe the contract of lease set out in the answer, and especially as to what might have constituted a waiver by the defendant of his right to damages for a failure to enclose the lands as provided for in the lease. But we see nothing in either of these instructions, of which the defendant had just reason to complain. *Hunter* v. *Leavitt*, *supra.*

In construing an uncertain or ambiguous provision of a contract, each party must be held to the construction which his own conduct has placed upon it, where such conduct inevitably operates as an admission against his interests; and the application of this rule, we think, fully sustains both of the instructions lastly above set out. *Morris* v. *Thomas*, 57 Ind. 316.

The defendant asked the court to give five separate instructions.

The first of the instructions thus asked for by him was, in substance, that, if John W. Heath did not construct a good and substantial fence upon every side of the lands described in the lease (outside as well as partition fences) before March 1st, 1875, the defendant would be entitled to damages to the extent of the difference between the rental value of the lands when well fenced and their rental value as they were fenced.

This instruction was modified by the court by striking out the words "outside as well as partition fences," and was given as thus modified.

The defendant excepted, and it is contended that the court erred in thus modifying the instruction, inasmuch as partition fences were as necessary as outside fences, upon a farm as large as that included in the lease. But no error is apparent to us in the modification complained of. Nothing was said in the lease about partition fences, and it was not the province of the court to supply any supposed omission in that respect. It was for the jury to determine from the evidence what constituted, or what was necessary to constitute, a good and substantial enclosure of the lands embraced within the lease.

The second instruction asked for by the defendant requested the court to say to the jury that the "mere occupancy of the lands by the defendant would not of itself be *any* sufficient proof of such acceptance ;" but the court refused to so instruct the jury, and that refusal is also complained of here.

The "mere occupancy" referred to was doubtless not sufficient of itself to show an "acceptance" by the defendant of the work done by John W. Heath, as a full compliance with the terms of the lease on the latter's part, but it was nevertheless a circumstance tending to show such ac-

ceptance, and proper to be considered in that view by the jury, in connection with the other evidence in the cause. But, from the peculiar phraseology of the instruction refused as above, we are in doubt as to what construction it ought to bear with reference to our views of "mere occupancy" as thus expressed, and hence we can not say that the court erred in refusing the instruction.

The third, fourth and fifth instructions asked for by the defendant were as follows :

"3d.   The presumption is that a written contract contains the full agreement of the parties.  Oral evidence may be considered by the jury to explain a written contract, but not to vary or contradict the terms of a written contract, which is in itself complete.

"4th.   In determining the quality of the fence described in the written lease as a good, substantial fence, the jury can accept that part of the fence which was built by the defendant, Joseph, as sufficient, and such fence so built under contract might be accepted as a sample of the fence with which John W. Heath promised to enclose the lands described in the lease.

"5th.   The jury, in determining whether or not the partition fences between the land in controversy and the lands of Finch, Scott, Buck and Emerson, were to be rebuilt and made more substantial, the jury will not regard any evidence of conversation had between the parties prior to the execution of the written lease, but the jury may consider evidence of any agreement made subject to the execution of the written lease, by which said John W. Heath would be excused from building said partition fences."

These instructions were also refused, and the defendant reserved exceptions.

This third instruction did not, as an abstract proposition, state the law quite correctly.  It is not a general rule

that oral evidence may be considered by a jury to explain a written contract. That can only be done in a special and limited class of cases. If it had stated the law correctly, there was nothing in the evidence to which it was fairly applicable. We are unable to see the practicable application of this fourth instruction to the evidence. At all events, the subject-matter of the instruction had been sufficiently covered by instructions previously given.

For reasons given in this opinion while commenting on the testimony of John W. Heath, the fifth instruction, lastly above set forth, was obviously inapplicable to the evidence.

The court was evidently right in also refusing to give the three last named instructions, asked for by the defendant.

But it is insisted that the verdict was not sustained by sufficient evidence. The evidence was in some respects quite conflicting. There was evidence which would have sustained a verdict more favorable to the defendant. But there was, also, evidence which tended directly and fully to support the verdict as returned by the jury. Under such circumstances, there was nothing in the evidence which would justify us in disturbing the verdict.

The judgment is affirmed, with costs.