Filed Nov. 8, 1883.

---

No. 9926.

FOULKS v. FALLS.

ATTORNEY AND CLIENT.—*Contract.*—*Receipt.*—A writing acknowledging the receipt of a claim "for collection" is a contract to collect, and if given by one not an attorney, who at the time represents himself as such, it imposes on him the duty and liability of an attorney.

SAME.—*Evidence.*—Where a receipt of a claim for collection is not signed by the party as an attorney, in an action thereon for failure to collect, parol evidence is admissible to show in what capacity the defendant received the claim, but not to vary the terms of the receipt.

SAME.—*Attachment, Duty as to.*—It is not the duty of an attorney to make the affidavit or execute the bond in attachment, even when instructed to attach; nor should the practice of so doing be encouraged, and there is no liability for failing to do so.

SAME.—*Statute of Limitations.*—A suit to enforce the liability of an attorney upon one not an attorney, who agrees in writing to collect a claim, upon the ground that he orally represented himself to be an attorney, is not upon a contract partly by parol, and is not barred by the limitation of six years.

From the Knox Circuit Court.

*G. G. Reily, W. C. Johnson, W. C. Niblack, W. H. De Wolf* and *S. N. Chambers,* for appellant.

*O. F. Baker,* for appellee.

ZOLLARS, J.—In March, 1881, the appellee instituted this suit against appellant and two others upon the following written instrument:

"VINCENNES, February, 1874.

"Received of Mrs. Diana Falls, one note against Z. P.

Estes for eleven hundred dollars, having credits of three hundred and sixty-seven dollars; this for collection.

"H. A. FOULKS."

The purpose of the action is to charge the defendants, as attorneys, for a failure to collect the note or due-bill against Estes as agreed upon. The substantial averments of the complaint are, that on the 18th day of February, 1874, the defendants represented themselves to the plaintiff to be attorneys at law, and as partners, engaged in that business and profession; that appellee, on that day, being the owner of a due-bill (called a note in the above written instrument) executed by Estes, and he being a non-resident of the State and the owner of land in Knox county of the value of $2,000, of all of which the defendant knew, she contracted with them in writing for the collection thereof, by due process of law, which contract they executed by the name and style of H. A. Foulks; that contemporaneous with the execution of said contract, appellee directed them to institute a proceeding in attachment, to attach the land of Estes, which they then undertook and promised to do, but negligently and unskilfully delayed and failed so to do; that on the 17th day of March, 1874, Estes conveyed the land to an innocent purchaser, and became wholly insolvent, by means of which negligence and failure to obey the reasonable instructions of appellee she lost her claim, to her damage of $2,000. The evidence establishes the following facts, viz.:

Appellant executed the written instrument above set out, and received from appellee a due-bill on Estes. At that time appellant was not engaged in the practice of the law, and was not a lawyer at that time, before nor since.

At that time Estes was the owner of land in Knox county, and on the 17th day of the following month executed a mortgage thereon to an innocent party, for its full, or about its full value, which mortgage was foreclosed in 1875, and the property bought in by the mortgagee.

At, before, and since the time appellant received the due-

bill from appellee, the defendants William H. DeWolf and Smiley N. Chambers were, and have been lawyers, practicing that profession as partners. Appellant never was a partner with them, nor engaged with them in making collections, but in one or two instances had received claims and turned them over to DeWolf and Chambers for collection. A short time after appellant received the due-bill, perhaps the next day, he offered it to DeWolf and Chambers for collection, but they, at that time, declined it, because they were not practicing in Illinois, where Estes lived. On the 16th day of March, 1874, hearing that Estes was in Vincennes, DeWolf and Chambers filed a complaint upon the due-bill, and caused summons to issue, but the sheriff failed to find him.

In April following, a settlement was made with Estes, the due-bill was surrendered to him, and he executed a new note to appellee. On the 18th day of June following, upon an affidavit and bond made and executed by appellee, a suit in attachment was instituted in favor of appellee against Estes on the new note. After this the new note was exchanged for a note on one Odell.

In the bringing of the suits, giving of the new note by Estes, and the exchange of it for the Odell note, DeWolf and Chambers represented the appellee, and acted for her, with her knowledge, consent and request.

There is a conflict in the evidence of appellee, and DeWolf and Chambers, in relation to the Odell note; she testifying that her instructions to them were not to accept the note unless secured by mortgage; they disputing the part in relation to the mortgage. That, however, has only a remote bearing upon the case in hearing. So far as it has any bearing, it tends to show that appellee had adopted DeWolf and Chambers as her attorneys instead of appellant, and thereby waived any instructions given to him. After the receipt of the Odell note, appellee endorsed it to DeWolf and Chambers, as collateral security, for a loan of $40, and left it with them until 1876,

when she went to them and learned that all was lost, as Odell had become insolvent.

Appellee testified that when she gave the due-bill to appellant, he told her that "We, Foulks, DeWolf and Chambers, are partners at law, and will collect it for ten per cent.," but did not tell her that he was a lawyer; that she told him about the Estes land, and that she wanted it attached at once; that she never saw Foulks, or DeWolf, or Chambers, from the time she got the receipt until the bringing of the suit on the 16th day of March, when DeWolf and Chambers sent for her, and never spoke to appellant about it until 1876.

Appellant, in his testimony, denied stating to her that he was engaged in business with DeWolf and Chambers, or that "We, Foulks, DeWolf and Chambers, will attend to its collection."

He stated further, that when appellee brought the due-bill to him she said she did not know any lawyer, and came to him as a friend; that there was an account between her and Estes, and she gave him no further instruction than that she wanted it fixed up, and that he said to her that what was done, would be done by DeWolf and Chambers, as they were his lawyers; that he told her the only way to collect it was by attachment, and she replied that she did not want to take back the old sand hill; that he merely agreed to attend to the matter as a friend and neighbor, and not as a lawyer or collecting agent.

The written instrument above set out was introduced in evidence, and appellee was allowed to give the contents of the Estes due-bill.

Upon this evidence the jury returned a verdict in favor of DeWolf and Chambers, and against appellant. His motion for a new trial was overruled, he excepted, and prosecutes this appeal.

In view of the fact that appellee consented to the taking of the new note, the exchange of it for another, and acquiesced in the acts of DeWolf and Chambers as her attorneys, her

statements in relation to appellant are remarkably specific in some particulars, but, there being a conflict between her and appellant, the case must be decided upon the theory that the evidence tends to show that he took the due-bill under the circumstances as detailed by her. Does this make him liable for the loss as charged?

Appellant contends, *first*, that the written instrument sued upon is simply a receipt, having none of the elements of a contract; and, *second*, that if it contains any elements of a contract, it but partially expresses the contract, and that, under the averments of the complaint and the testimony of appellee, the contract as made was partially in writing and partially not in writing, and hence all remedy under it was barred after six years, under the authority of the case of *Board, etc.,* v. *Shipley,* 77 Ind. 553.

We are of the opinion that these contentions can not be maintained. The action is based upon contract and not tort. *Staley* v. *Jameson,* 46 Ind. 159 (15 Am. R. 285); *Burns* v. *Barenfield,* 84 Ind. 43. While the written instrument sued upon has the elements of a receipt, taken in all its parts, it expresses a contract for the collection of the due-bill. Had it been signed by appellant as an attorney, it would upon its face express an attorney's contract for the collection of the due-bill. *Smedes* v. *Elmendorf,* 3 Johns. 185; *Bradstreet* v. *Everson,* 72 Pa. St. 124 (13 Am. R. 665); *Sanger* v. *Dun,* 47 Wis. 615; Abbott's Trial Ev. 280, 557.

It is not so signed, however, and the question arises, may parol evidence be heard to ascertain the profession or business or the professed business of appellant at the time he executed the written contract and received the due-bill? It is important to know in what capacity he received the due-bill, whether as a lawyer or otherwise. The liability of a lawyer in such case is measured by a different rule than would be applied to a banker, express company, or farmer.

Under a contract like that sued upon, the lawyer is liable for a failure to institute suit, if by such failure a loss ensues.

The same could not be said of the banker, express company or farmer. Shall this contract, then, be enforced as a contract with a lawyer, or as a contract with one of the other classes?

It is the province of the court to declare the meaning of the words of the instrument, and in order that this may be done, it is necessary to know in what capacity appellant contracted, and for this purpose it is competent to have resort to parol testimony.

"The legal effect of the instrument as between the parties thereto is not varied by this proof, but only the accountability of the defendant." Neither is anything added to the contract, so as to make it partially in parol. Abbott's Trial Ev. 280, 294; *Richards* v. *Millard*, 56 N. Y. 574; *Dana* v. *Fiedler*, 12 N. Y. 40; *Pollen* v. *LeRoy*, 30 N. Y. 549; *Bell* v. *Golding*, 27 Ind. 173. As bearing more or less directly upon the point here decided, see *Mace* v. *Jackson*, 38 Ind. 162; *Indiana Central Canal Co.* v. *State*, 53 Ind. 575; *Heath* v. *West*, 68 Ind. 548.

Appellant was not a lawyer, but, as we have said, the evidence tends to show that he represented to appellee that he was engaged in the practice of that profession with DeWolf and Chambers. It may be said, then, that he executed the contract as an attorney, and thereby assumed all the liability of an attorney which attaches under the contract. In receiving the due-bill as an attorney under the contract, the law implied, as a part of the contract, a promise on the part of appellant to exercise the care, diligence, knowledge and skill of an ordinarily prudent and competent attorney, and that he would at least pursue the ordinary remedies for collection, and, if need be, by suit and execution, and obey all proper instruction of his client in relation thereto, so long as he continued as such attorney. This agreement being implied by the law as a part of the written contract, the averment of it in the complaint, or the proof of it by oral testimony, added nothing to the contract or to the responsibility of the appellant. 2 Parsons Con., pp. 54, 515; *Reilly* v. *Cavanaugh*, 29

Ind. 435; Weeks Attorneys, section 259; *Walpole* v. *Carlisle,* 32 Ind. 415; *Skillen* v. *Wallace,* 36 Ind. 319; *Hillegass* v. *Bender,* 78 Ind. 225.

A failure in relation to any of these duties would constitute a breach of the contract, upon which an action might be predicated, and, being thus predicated upon a violation of the written contract, it would not be barred by the six years' limitation. If appellant is liable in this action, it must be for a violation of the written contract sued upon. He can not be held liable upon a contemporaneous verbal contract.

The *gravamen* of this action is the failure to attach the Estes lands before he had encumbered them with the mortgage, and the important question in the case is, was appellant's neglect in that regard such as to render him liable in damages?

While the contract imposed upon him the duty of skill and diligence as an attorney, it also imposed upon appellee the duty of co-operation, the furnishing of the necessary bond and the making of the necessary affidavit, if she wished a resort to the extraordinary remedy by attachment.

In the absence of instructions, it can not be said that it was the duty of appellant, under the contract, to institute attachment proceedings. Not only would an affidavit and bond be required in such proceedings, but the hazard of heavy loss upon the bond would be incurred.

It is possible to conceive of a case where a resort to such remedy might jeopardize, rather than expedite the collection. If such a case should occur, it might well be said that the attorney would render himself liable to his client for thus proceeding without instruction.

It is not the duty of attorneys to make affidavits in attachment proceedings. They sometimes do so, but the propriety of such course has always been doubted by the profession, and in some instances the *right* has been questioned.

Such a practice should be discouraged rather than imposed

as a duty. See *Abbott* v. *Zeigler*, 9 Ind. 511. It clearly would be unreasonable to hold that under a general employment, such as the contract in this case makes, it is the duty of the attorney to furnish a bond and incur the personal liability that might result therefrom.

The propriety of lawyers signing bonds for their clients has always been questioned, and many courts have adopted rules absolutely prohibiting it. See *Ohio, etc., R. W. Co.* v. *Hardy*, 64 Ind. 454. The employment and contract imposed no duty upon appellant to make and execute such affidavit and bond; nor would positive instructions from appellee requiring such services have imposed such duty.

The undertaking of the attorney is to perform such services as properly belongs to the profession; such as the client, for want of learning and skill, can not himself perform; but it does not require him to assume the burdens and risk of both attorney and client.

A proceeding by attachment is called an extraordinary remedy, yet, being auxiliary to the main action, so far as the services of an attorney may be required in such proceeding, they fall within the general employment in the main case.

In a proper case he may be made liable for a failure to prepare the proper affidavit and bond in attachment; for the failure to give proper advice, or the giving of erroneous advice in relation to such procedure.

The case in hearing, however, is not based upon a failure to advise, or upon an error in advising, appellee of her rights and the mode of procedure. She makes no such claim, either in her complaint or testimony, or that she had not full and ample information of what was required to institute the attachment proceedings.

Had she made such a claim, the case would be a different one from that before us. In the absence of such allegation and proof, we can not assume such ignorance on the part of appellee, or laches on the part of appellant. The claim is solely that appellant did not obey the instructions to attach the

land.   Of course there could have been no attachment without the preparation of an affidavit and bond, but such preparation would have been utterly futile unless the affidavit should be sworn to and the bond executed.   As it was the duty of appellee, and not of appellant, to verify the affidavit and execute the bond, and as she made no offer or effort to perform that duty, it is difficult to conceive how she can claim damages from appellant for a mere failure to write out the instruments.   She occupies the attitude of asking damages for the violation of a contract which she had herself violated in reference to the same subject-matter.   Her testimony shows that after she delivered the due-bill to appellant, she made no further calls upon him for about two years, and at no time offered, or showed her willingness or readiness, to make the affidavit or furnish the bond.

We are, therefore, of the opinion that she can not recover in this action.   We suggest, without deciding, that whatever rights she may have had against appellant would have been waived by her subsequent conduct.

On the 16th day of March, after she had delivered the due-bill to appellant in February, she was at the office of DeWolf and Chambers, and under their advice, as her attorneys, commenced an action against Estes for the collection of the due-bill.   At that time she made no mention of an attachment proceeding, although Estes still owned the land unincumbered.   From that time forward, in the settlement with Estes, the surrender of the due-bill, the taking of a new note, the commencement of a new action, and the exchange for the Odell note, she recognized DeWolf and Chambers as her attorneys, and acted upon their advice, without consultation with, or reference to, appellant.

Upon the question of waiver, and as bearing somewhat remotely upon the waiver here suggested, see *Charlestown School Township* v. *Hay*, 74 Ind. 127; *Hunter* v. *Leavitt*, 36 Ind. 141; *Davar* v. *Cardwell*, 27 Ind. 478; *Parks* v. *Evansville, etc., R. R. Co.*, 23 Ind. 567; *Byrne* v. *Rising Sun Ins. Co.*, 20

Ind. 103; *Masonic, etc., Ass'n* v. *Beck,* 77 Ind. 203 (40 Am. R. 295).

Other questions are discussed with much ability and learning by counsel upon either side, but as they are subordinate to the question decided, we need not extend this opinion for an examination of them.

Judgment reversed, with costs, and cause remanded, with instructions to the trial court to sustain appellant's motion for a new trial.

NIBLACK, C. J., did not participate in the decision of this cause.

Filed Nov. 20, 1883.