## JACKSON ET AL. *v.* CREEK.

[No. 6,888. Filed March 14, 1911. Mandate modified May 9, 1911.]

1. APPEAL.—*Decisions.*—*Value as Authority.*—The facts of a case should be known in order to determine the value of a decision as an authority. p. 547.

2. REAL PROPERTY.—*Rents.*—*Right to.*—In the absence of a contract providing otherwise, the rents of land belong to the owner of such land. p. 547.

3. CONTRACTS.—*Special.*—A special contract is an oral or written express contract with provisions which, if omitted from the ordinary contract, the law will not supply. p. 547.

4. CONTRACTS.—*Express.*—An express contract is one whose terms are stated orally or in writing, and it may, or may not, be special. p. 547.

5. CONTRACTS.—*Sales of Land.*—*Rents.*—A contract for the sale of land, providing that if full payment be made by a certain date, the current year's rent should belong to the purchaser, is special. p. 547.

6. MONEY RECEIVED.—*Assumpsit.*—*Implied Contracts.*—The action for money had and received rests upon an implied promise, and may be maintained, by the person entitled thereto, against any person who has received money which, in good conscience, he should not retain. p. 547.

7. CONTRACTS.—*Special.*—*Assumpsit.*—*When Lies.*—General assumpsit does not lie where there is a special contract, except, among other instances, (1) where the contract is executed and payment is due, in which case the measure of recovery is the amount fixed in the special contract, and (2) where the special contract has been altered or deviated from by mutual consent. pp. 548, 550, 551.

8. MONEY RECEIVED.—*Special Contracts.*—In certain instances a common count for money had and received may be sustained by proof of a special or an express contract. p. 550.

9. MONEY RECEIVED.— *Rents.*— *Special Contracts.*— *Evidence.*—A purchaser whose contract called for the rents of the purchased farm for the current year, if he paid the purchase money by January 1, may recover therefor, on making such payment, under an action for money had and received, the vendor receiving the rents being under an implied contract to pay the money received to the purchaser, the contract and deed being competent evidence in the action. p. 551.

10. MONEY RECEIVED.— *Rents.*—*Demand.*— *Interrogatories.*— In an action of assumpsit for rents received against a vendor, his

wife, and tenant, interrogatories showing that the tenant paid them to the vendor, that no demand was ever made upon the wife, and that the vendor alone received and retained them, are in irreconcilable conflict with a general verdict for the plaintiff against such wife.  p. 552.

11.  MONEY RECEIVED.—*Rents.*—*Peremptory Instruction.*—In an action of assumpsit for rents received against a vendor, his wife, and tenant, a peremptory instruction should be given for the wife, where the evidence showed that the rents were received and retained by the husband alone.  p. 552.

12.  MONEY RECEIVED.— *Rents.*— *Contracts.*— *Instructions.*— In an action of assumpsit for rents received against a vendor, his wife and tenant, an instruction that if the vendor and his wife contracted as a part of the sale to give the rents to the purchaser and defendants received and converted them to their own use, the jury should find for the plaintiff for the amount of such rents, is bad, since the instruction does not show that the tenant knew of the contract to pay the rents to such purchaser, and since the purchaser was not required by such instruction to perform the conditions of his contract, which alone entitled him to such rents.  p. 552.

13.  MONEY RECEIVED.—*Rents.*—*Contracts.*—*Instructions.*—In an action for rents received, against the vendor, his wife, and tenant, the purchaser's contract entitling him to the rents provided he paid the purchase money by January 1, an instruction that if a subsequent agreement were made "in which said plaintiff released the defendants from the payment to him of said rents then * * * [the jury] should find for the defendants," is erroneous, in leaving an inference that the rents belonged to the plaintiff, whereas they did not until a full compliance by him with the original or subsequent contract was made.  p. 553.

14.  VENDOR AND PURCHASER.—*Covenants.*—*Warranty.*—*Marketable Title.*—*Adverse Possession.*—*Instructions.*—In an action by a purchaser against his vendors for rents alleged to be due by virtue of a contract of purchase, the vendors covenanting to convey by "a good and sufficient general warranty deed, in fee simple," an instruction that such a covenant requires "not merely * * * a good, but an indubitable title" and that "a good title means, not merely a title valid in fact, but a marketable title, which can again be sold to reasonable purchasers or mortgaged to a person of reasonable prudence as a security for a loan" and that "a title open to a reasonable doubt is not a marketable title," is erroneous, the plaintiff being entitled only to a good and marketable title, and a title by adverse possession may be sufficient, since a perfect title can be so acquired.  p. 554.

15. VENDOR AND PURCHASER.— *Covenants.—Warranty. — Adverse Possession.—Marketable Title.—Instructions.*—In an action by a purchaser, for rents alleged to be due to him by virtue of a contract of purchase requiring the vendors to convey the premises by "a good and sufficient general warranty deed, in fee simple," and evidence of a title by adverse possession having been admitted, an instruction that an alleged defect in the title would not excuse performance by the purchaser, if the vendors had been in open, peaceable and uninterrupted possession of said real estate for more than twenty years under a claim of ownership, and were at that time in possession and were able to give possession to the purchaser, is correct, and should have been given, since a title so acquired extinguishes all adverse claims or interests. p. 555.

16. APPEAL.— *Death.— Mandate.*— Where a successful appellant dies after the submission of his case on appeal but before the decision thereon, the judgment of reversal will be ordered to take effect as of the date of submission. p. 556.

From Howard Superior Court; *P. H. Elliott,* Judge.

Action by Marion Creek against Jacomiah H. Jackson and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

*W. C. Overton* and *Blacklidge, Wolf & Barnes,* for appellants.

*Joseph C. Herron,* for appellee.

FELT, J.—Suit for money had and received. Judgment for appellee in the sum of $355.86, against appellants, from which this appeal is taken.

Errors assigned and argued are the overruling (1) of appellants' motions for a new trial, and (2) their motion for judgment on the answers to the interrogatories, notwithstanding the general verdict.

A new trial was asked on the following grounds: (1) The "damages assessed are excessive;" (2) the verdict is not sustained by sufficient evidence and is contrary to law; (3) erroneously receiving and excluding certain testimony; (4) erroneously refusing certain instructions tendered and erroneously giving other instructions.

The facts not controverted show that on April 11, 1906, appellants Jackson and Jackson, who were husband and wife, executed to appellee a title bond, in writing, for eighty acres of real estate in Blackford county, Indiana. The provisions of said bond which are material to this appeal are as follows:

"Subject to all taxes falling due in the years 1906, 1907 and thereafter, and to the assessments thereon for gravel road purposes, * * * and subject to a lease thereon until March 1, 1907, * * * for the sum of $5,500, to be paid as follows: $400 cash, $600 on June 25, 1906, $850 on October 1, 1906, and $3,650 on January 1, 1907, with interest at six per cent per annum from date, for which several amounts notes are given. Said Marion Creek is to have possession of the premises from March 1, 1907, and is to pay all taxes and assessments accruing thereon. * * * Now if, on full and punctual payment of said notes, said Jacomiah H. Jackson and Emma Jackson shall, upon reasonable request, execute to said Marion Creek, his heirs or assigns, a good and sufficient general warranty deed, in fee simple, for said premises, then this obligation shall be void, otherwise to remain in full force. Said Jackson and Jackson are to deliver their abstract of title to said land with said deed. If said Marion Creek pays said notes by January 1, 1907, he shall be entitled to the rents for 1906.

Witness our hands and seals the day and year first above written.

Jacomiah H. Jackson.
Emma Jackson.

I accept the above bond on the terms therein named.
Marion Creek."

At the time the bond was executed, it was agreed that the contract, notes and abstract of title should be placed in the Citizens National Bank of Kokomo, Indiana, to be held until all the notes were fully paid, at which time appellants Jackson and Jackson were to execute to appellee said warranty deed. The contract, notes and abstract were placed in the hands of W. C. Overton, who deposited them in accordance with the foregoing agreement.

The jury by answers to the interrogatories found that the title to the real estate from which the rents accrued remained in appellants Jackson and Jackson until February 4, 1907; that appellee was to have the rents if he paid therefor before January 1, 1907; that said written contract was the only agreement between said parties that appellee should have such rents; that appellant Landon was the tenant upon said farm, and on February 9, 1907, paid the rents for 1906, in the sum of $355.86, to appellant Jacomiah H. Jackson; that appellee did not, prior to January 2, 1907, notify any one of the appellants that he would not accept the title to the real estate, but did make some objection thereto in the presence of Jacomiah H. Jackson; that appellee at no time notified appellants that he would not accept the title to the land; that on December 28, 1906, appellant Jacomiah H. Jackson met appellee, and presented a warranty deed duly executed, according to said contract, which appellee refused to accept; that said Jacomiah H. Jackson, on the evening of that day, by letter, notified appellee that he stood upon the contract; that on said date appellee demanded of said Jacomiah H. Jackson an order on said Landon for the rents for 1906, which was refused; that on February 4, 1907, appellee demanded a reduction of $50 from the purchase price, on account of alleged defects in the title, and said Jackson and Jackson agreed to a reduction of $25 to satisfy the claim of appellee as to such defects; that appellee refused to accept the deed formerly tendered to him, and demanded another deed that should show their new agreement, and promised to pay the balance of the purchase money, under said agreement, to Overton & Barnes, attorneys, to be paid to said Jackson when he and his wife executed said deed; that no other agreement was entered into by the parties at that time; that the balance of the purchase money was accordingly paid to Overton & Barnes, who paid it to appel-

lant Jacomiah H. Jackson when the deed was executed and delivered, which deed was duly recorded; that on January 1, 1907, appellants Jackson and Jackson had been in open, continuous, notorious and adverse possession of said real estate under a claim of title for more than twenty years; that no demand was made by appellee upon appellant Emma Jackson for said rents and profits for the year 1906.

In addition to the facts shown by the answers to the interrogatories there was some testimony tending to show that appellee before January 1, 1907, made objection to the title, on account of an alleged irregular deed and some old mortgages, but appellants contended that no such objection was made until late in January, 1907.

Appellee contends that on December 28, 1906, he offered to pay all the purchase money if appellant Jacomiah H. Jackson would fix the title. This was denied by appellants, who assert that the only excuse given at that time for not paying in full was that some persons had failed to pay appellee money due him, and he said he did not want to borrow and pay interest. The deed which was accepted and recorded was not introduced in evidence.

The principal question presented by this appeal is raised upon the admission and exclusion of evidence, upon the motion for judgment on the interrogatories, and upon the instructions given and refused by the court.

It is contended by appellants that the facts show that there was a special, express contract in writing between the parties in relation to the rents in controversy, and that where such contract is shown to exist there can be no recovery upon an implied obligation in a suit for money had and received.

On the other hand, it is contended by appellee that the decisions of our courts fully warrant such recovery.

In the various cases cited we find apparent conflict, arising mainly from a failure to discriminate between the

1. terms "special" and "express," as applied to contracts, and in some instances the failure to distinguish between a question of pleading and one of evidence. The particular facts of each case must be known before its value as an authority can be determined.

2. The title to said real estate remained in appellants Jackson and Jackson until February 4, 1907, and in the absence of a special contract to that effect appellee is not entitled to the rents for 1906, for they belong to the person who held the title.

3. A special contract is one with peculiar provisions not found in the ordinary contract relating to the same subject-matter, and which, if omitted from the ordinary contract, the law will not supply. *Forester* v. *Forester* (1894), 10 Ind. App. 680.

4. An express contract is one whose terms are stated either orally or in writing. An express contract may or may not be special, but a special contract is always express. *Forester* v. *Forester, supra; Pence* v. *Beckman* (1894), 11 Ind. App. 263, 54 Am. St. 505; 7 Words and Phrases 6572.

5. The provisions on the subject of said rents amount to a special contract. On the conditions stated in the contract, appellee is entitled to the rents for 1906, but not otherwise. *Kratemayer* v. *Brink* (1867), 17 Ind. 509; *Deputy* v. *Mooney* (1884), 97 Ind. 463; *Goodwin* v. *Hudson* (1877), 60 Ind. 117.

6. The action for money had and received rests upon an implied promise, and may be maintained against the person who has received money, either from the plaintiff or from a third person, under circumstances which in equity and good conscience, he should not retain. *Harbaugh* v. *Tanner* (1904), 163 Ind. 574; *Hunt* v. *Milligan* (1877), 57 Ind. 141, 143; *Ferguson* v. *Dunn's Admr.* (1867), 28 Ind. 58; *Field* v. *Brown* (1896), 146 Ind. 293; *Lemans* v. *Wiley* (1884), 92 Ind. 436.

It is contended by appellants that while, under certain conditions, a party may maintain an action for money had and received where there is an express contract, it 7. cannot be done where the contract is special, for the reason that the suit for money had and received is upon an implied obligation, which does not arise where the contract is special; that proof of a special contract will not sustain the complaint which is based upon an implied agreement, and to support this contention, appellants' counsel cite the cases of *Forester* v. *Forester, supra, Pence* v. *Beckman, supra,* and *Cranmer* v. *Graham* (1825), 1 Blackf. 406.

In the case of *Forester* v. *Forester, supra,* the court held that the agreement under investigation was an express, and not a special, contract, but said at page 686: "There is no conflict between the common-law rule and the decisions in this State when properly construed, although there are certain expressions in some of them that indicate to the contrary. The rule is that the pleader may declare on an express, non-special contract, and recover upon proof of an implied promise. But he cannot declare on a special contract and recover upon proof of an implied promise, nor *vice versa.*"

In the case of *Pence* v. *Beckman, supra,* the suit was for the collection of an account for pasture, and plaintiff alleged that pasture was furnished at the special instance and request of defendant. The proof showed that the live stock was permitted to graze upon the lands of plaintiff, with the knowledge of both parties to the suit, but that nothing was ever said between them about price or payment.

It was contended that there was a fatal variance between the allegations of the complaint and the proof, and that the complaint declared upon an express, special contract, while the proof established an implied contract. The court held that there was no variance between the al-

legations and the proof, and that the averments were upon an express contract. The questions actually decided in the cases of *Forester* v. *Forester, supra,* and *Pence* v. *Beckman, supra,* are in harmony with the holdings of our Supreme Court and Appellate Court, and the statement in *Forester* v. *Forester, supra,* to the effect that a suit cannot be brought upon an implied promise and be sustained by proof of a special contract, while correct, as applied to a certain class of cases, should be qualified by exceptions not mentioned in that case, some of which we shall hereafter mention, and which are fully discussed in the cases of *Board, etc.,* v. *Gibson* (1902), 158 Ind. 471, and *Cutter* v. *Powell* (1795), 2 Smith's Leading Cases 1. Also see *Peden* v. *Scott* (1905), 35 Ind. App. 370.

The doctrine stated in the case of *Cranmer* v. *Graham, supra,* was doubted in *Lomax* v. *Bailey* (1845), 7 Blackf. 599, and was, by implication, overruled in *Epperly* v. *Bailey* (1851), 3 Ind. 72; and in *Adams* v. *Cosby* (1874), 48 Ind. 153, the cases are reviewed, and the case of *Cranmer* v. *Graham, supra,* is held no longer to declare the law as applied in this State.

In the case of *Kerstetter* v. *Raymond* (1858), 10 Ind. 199, the court held that where there has been a special contract between the parties, a suit may be maintained in general assumpsit in certain instances: (1) Where the whole of the contract has been executed on the part of plaintiff, and payment is due him, the suit may be brought on the special contract, or in general assumpsit, and that in the latter case the measure of damages will be that fixed by the special contract. (2) If the special contract has been altered or deviated from in particulars, by common consent, general assumpsit will lie. Other exceptions to the general rule are also shown, which are not pertinent here.

The same case holds that if defendant desired to avail

himself of the benefit of the written contract, he could do so by pleading it in answer to the complaint and offering it in evidence.

In the case of *Board, etc.,* v. *Gibson, supra,* our Supreme Court cites approvingly the case of *Kerstetter* v. *Raymond, supra,* and reiterates the exceptions to the general rule therein shown. See, also, *Jenney Electric Co.* v. *Branham* (1896), 145 Ind. 314, 33 L. R. A. 395; *Schilling* v. *Templeton* (1879), 66 Ind. 585.

The contention of appellants' counsel, that this complaint cannot be sustained by proof of a special contract, seems to have some foundation in reason, but our courts, in applying the rule permitting a recovery upon a common count in assumpsit, have not generally recognized or maintained the distinction, and our code (§249 Burns 1908, §249 R. S. 1881) does not encourage such distinctions.

8. The rule permitting a recovery in certain instances upon a common count for money had and received, and in kindred actions, where there is a contract between the parties, has been recognized and sustained both in cases where the agreement was special and where it was shown to be only an express contract. *Marshall* v. *Lewark* (1889), 117 Ind. 377; *Shilling* v. *Templeton, supra; Adams* v. *Cosby, supra; New Kanawha Coal, etc., Co.* v. *Wright* (1904), 163 Ind. 529; *Harbaugh* v. *Tanner* (1904), 163 Ind. 574; *Scott* v. *Congdon* (1886), 106 Ind. 268; *Jenney Electric Co.* v. *Branham, supra; Peden* v. *Scott, supra; Stucky* v. *Hardy* (1896), 15 Ind. App. 19; *Brown* v. *Perry* (1859), 14 Ind. 32; *Spears* v. *Ward* (1874), 48 Ind. 541.

7. We are aware that the general rule still prevails in Indiana, that, where an action is brought for the breach of an implied contract, if the evidence discloses the breach of a special contract, there can be no recovery (*Bartlett* v. *Pittsburgh, etc., R. Co.* (1884), 94 Ind. 281; *Armacost* v. *Lindley* [1888], 116 Ind. 295; *Cleveland, etc.,*

*R. Co.* v. *Hollowell* (1909), 172 Ind. 466; *Indianapolis, etc.,
R. Co.* v. *Forsythe* (1892), 4 Ind. App. 326, 327); but this
rule does not apply when the action is brought to enforce an
implied contract, as in assumpsit for money had and received, and in similar actions.

Here the theory is that appellants Jackson and Jackson
agreed with appellee that he should have the rents due from
appellant Landon, and thereafter, in violation of this agreement, received from Landon the rents which belonged to appellee, and upon demand refused to pay them to him.
On this theory, if the evidence sustains it, appellant
Jackson, who received and retained said rents, did so
wrongfully, and the law implies a promise on his
part to pay to appellee. This was the question of
fact to be tried by the jury, and under the decisions
the contract and deed were competent evidence; *Kerstetter* v. *Raymond, supra; New Kanawha Coal, etc., Co.* v.
*Wright, supra;* 1 Greenleaf, Evidence (Lewis's ed.) §87;
*Jenney Electric Co.* v. *Branham, supra; Marshall* v. *Lewark,
supra.*

This action may be brought within either of the exceptions to the general rule heretofore shown. If the contract
was fully executed, except the payment to appellee
of the rents, the action could be so maintained, even
if the rents had at all times during the pendency of
the transaction been in the hands of appellants Jackson
and Jackson; and the fact that the undisputed evidence
shows that the rents were paid to appellant Jacomiah H.
Jackson by the tenant, after the deed was accepted and
the purchase money paid in full, only tends to make more
appropriate the action for money had and received. If the
original contract was changed, as contended, this would
bring the case within another exception, warranting the
action for money had and received.

Without pointing out each particular question raised to

which our conclusions are pertinent, it is apparent that the decision of the questions involved is adverse to appellants' contention.

Appellants made separate and several motions for judgment upon the answers to the interrogatories notwithstanding the general verdict. The answers to the interrogatories show that appellant Emma Jackson never had possession nor control of the rents for 1906, nor any part thereof; that they were retained by appellant Landon until February 9, 1907, when he paid them to appellant Jacomiah H. Jackson; that no demand was ever made upon appellant Emma Jackson for the rents, and that her only connection with the transaction was in signing the contract and in executing the deeds. Had this suit been upon an alleged breach of the contract, a different question would be presented from that which is now before us. These findings of the jury are in irreconcilable conflict with the general verdict, and the motion should have been sustained as to Emma Jackson.

Furthermore, she requested a separate instruction directing a verdict in her favor, and as there was no evidence tending to show a liability against her for money had and received, the instruction should have been given, and its refusal is available error in her favor.

The court, in instruction two, told the jury that if appellants Jackson and Jackson entered into a contract with appellee for the sale of said real estate, and in part consideration for the purchase price appellee "was to receive the rents derived from said farm for the year 1906, and * * * that thereafter defendants, in disregard of plaintiff's rights to and in said rents, appropriated and converted them to their own use and benefit, then * * * [the jury] should find for plaintiff, and assess his recovery of and from defendants in the sum equal to the value of said rents."

This instruction is objectionable for the reason that the conditions therein stated could not possibly warrant a recovery against appellant Landon, in the absence of a showing that he was a party to the agreement, or that he was bound by some notice or knowledge of appellee's claim. There being no claim or evidence to that effect, he should have been excepted from liability on the conditions stated. The instruction also omits any reference to the conditions of the contract by virtue of which, if at all, appellee was entitled to the rents, and would tend to lead the jury into an uncertain field of inquiry about "plaintiff's rights," when his right to recovery depended upon compliance with the terms of the contract, or showing a legal excuse for the failure so to do.

Instruction three, given by the court, told the jury that if after making the original contract a later and subsequent agreement was made between the parties, "in which said plaintiff released defendants from the payment to him of said rents, then  *  *  *  [the jury] should find for defendants."

This instruction would lead the jury to believe that if a new contract was entered into, still some affirmative act of release on the part of appellee was necessary to relieve appellants from the duty of paying to him the rents, when they should have been told that in such situation he could not collect the rents unless the new contract so provided, or his rights to the rents under the old contract were in some appropriate way preserved, for while the Jacksons held the title the rents would belong to them, in the absence of a special agreement to the contrary. The new contract would supersede the old, unless otherwise provided.

The court gave the following instruction: "(7) The court instructs the jury that where one enters into a contract to convey real estate by a good and sufficient general warranty deed, the vendee has the right, not merely

to have conveyed to him a good, but an indubitable title, and a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title knowing its defects. A good title means not merely a title valid in fact, but a marketable title, which can again be sold to reasonable purchasers, or mortgaged to a person of reasonable prudence as a security for a loan. A title open to a reasonable doubt is not a marketable title."

This instruction in effect told the jury that, under the contract requiring a conveyance by "a good and sufficient general warranty deed, in fee simple," appellants Jackson and Jackson were to give something more than a good and marketable title.

The evidence tends to show, and the jury found, that appellee did not reject the title, but asked that some alleged irregularities be corrected, or a reduction made in the price sufficient to cover the expense of correcting them. The irregularities pointed out were back of the period covered by the twenty-year statute of limitations, and indicate that appellee was demanding an absolutely perfect record title. This was more than his contract called for. He was entitled to a good and marketable title, and this requirement is met by a title not open to reasonable objection. A fee-simple title may be acquired as well by prescription as by grant, devise or inheritance. Even an apparently perfect record title may be shown to be defective, and on this account is open to the possibility of objection, though in the absence of other evidence such objection would be unreasonable.

An "indubitable title" not "merely a title valid in fact," as stated by the court, sets up a standard requiring a title open to no possible objection, however trivial, goes beyond the legal requirements, and in practical application approaches the impossible.

The court admitted evidence tending to prove title by prescription, but gave no instruction on the subject. Ap-

pellants tendered an instruction which told the jury that by the terms of the written contract appellee was not entitled to the rents unless he paid the purchase price on or before January 1, 1907, or was in some way legally excused for not doing so, and that an alleged defect of title would not excuse such non-payment, if defendants Jackson and Jackson had been in continuous, open, peaceable and uninterrupted possession of said real estate for more than twenty years under a claim of ownership, were at that time in possession of the land, and were able to give possession to appellee on March 1, 1907; and further told the jury that occupancy of the land by the tenant of the owner amounted to possession by the owner.

Appellants having tendered a good instruction on the subject of title by adverse possession, the court should have given it. It has been held that actual, open, continuous and uninterrupted adverse possession of real estate for more than twenty years under a claim of title will extinguish a title, legal except for such possession.

It has also been held that a title by adverse possession is sufficient on which to enforce the specific performance of a contract, and is a fee simple and perfect title.

In the case of *Tewksbury* v. *Howard* (1894), 138 Ind. 103, which was a suit for specific performance of a contract for the conveyance of real estate, the court said: "Title by adverse possession is as high as any known to the law. * * * A marketable title cannot be said to be more. * * * A marketable title is one not open to reasonable objection."

In *Sims* v. *City of Frankfort* (1881), 79 Ind. 446, the court said: "A title acquired by possession is a fee," and is "the highest and most perfect title known to the law." *Rennert* v. *Shirk* (1904), 163 Ind. 542; *Dyer* v. *Eldridge* (1894), 136 Ind. 654; *Burr* v. *Smith* (1899), 152 Ind. 469; *Moore* v. *Hinkle* (1898), 151 Ind. 343; *Webb* v. *Rhodes* (1902), 28 Ind. App. 393; *Wood* v. *Ripley* (1901), 27 Ind. App. 356.

The errors in giving and refusing instructions as shown were harmful to appellants. The judgment is reversed, with instructions to the lower court to sustain the motion for a new trial, to permit the parties to amend their pleadings, and file additional pleadings if they desire so to do.

## Mandate Modified.

Per Curiam.—Since the decision of this cause on appeal, and within the term, it has been made to appear that after the submission of the cause on June 11, 1908, and before decision here, Jacomiah H. Jackson, one of the appellants, died. It is therefore ordered that the judgment on this appeal be entered as of the date of submission.