David **WHITEHOUSE**, Appellant
(Plaintiff below),

v.

Thomas M. **QUINN**, Jr. and Clark &
Clark, Appellees (Defendants below).

No. 2–682A189.

Court of Appeals of Indiana,
Second District.

Dec. 27, 1982.

George Clyde Gray, George Clyde Gray, P.C., Indianapolis, for appellant.

John P. Price, Robert J. Shula, Robert D. MacGill, Bingham Summers Welsh & Spilman, Indianapolis, for appellees.

SHIELDS, Judge.

Appellant David Whitehouse (Whitehouse) is appealing an adverse summary judgment rendered in favor of Thomas M. Quinn, Jr. and Clark and Clark (Quinn) on Whitehouse's two-count complaint for attorney negligence and breach of an attorney-client contract. Whitehouse contends the judgment is erroneous because:

1) The contract claim was governed by the twenty-year statute of limitation applicable to contracts in writing other than those for the payment of money,

and, in any event

2) The statute(s) of limitation applicable to both claims was (were) tolled since Quinn's failure to advise Whitehouse of the legal effect of a release constituted fraudulent concealment of his causes of action against Quinn.

Additionally, Quinn raises an issue of appellate procedure by claiming Whitehouse waived all his issues on appeal by not setting forth verbatim in his appellant's brief those errors assigned in his motion to correct error which correspond to the particular argument advanced in the brief.

We affirm in part and reverse in part.

## FACTS

In early August 1977 Whitehouse sustained personal injuries in a motor vehicle collision. On August 18, 1977 he entered into a written contingent fee contract with attorney Quinn in which Quinn agreed "to represent and prosecute [Whitehouse's personal injury] claim to final settlement or judgment" "against several defendants including Russell A. Toothman, Michael Vaccarello, Kathie K. Christy *and others.*" (Our emphasis). In July 1978 Quinn secured $50,000 for Whitehouse from Toothman in exchange for a covenant not to sue. On November 21, 1978, in exchange for

$90,000 paid by Vaccarello, Whitehouse executed a "Release of All Claims." The release document stated, in part, Whitehouse "release[d] and forever discharge[d] . . . Vaccarello and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damage, loss or damages of any kind already sustained or that [he would] hereafter sustain in consequence of [the] accident."

Immediately beneath the date and above the signature line the release stated in bold print: "CAUTION—READ BEFORE SIGNING."

On August 13, 1981, Whitehouse filed the present action against Quinn. Count I alleged Quinn was "negligent in failing to secure all of the remedies available" to Whitehouse, specifically failing to bring suit against the State of Indiana and the contractor who performed repairs on the portion of the highway on which the motor vehicle collision occurred. Count II alleged Quinn's failure to bring suit against the state and the contractor constituted a breach of the contingent fee contract. In his answer and subsequent motion for summary judgment Quinn maintained both counts of the complaint were governed by the two-year statute of limitation in clause 1 of I.C. 34–1–2–2 (Burns Code Ed.1973) and thus were barred as Whitehouse filed his complaint over two years after he executed the complete release with Vaccarello.[1]

In response to Whitehouse's request for admissions, Quinn conceded the existence and terms of the written contingent fee contract and admitted he "investigated and

1. I.C. 34–1–2–2 provides:
 "[t]he following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards. First, For injuries to person or character, for injuries to personal property . . . within two [2] years."

This provision was recodified without substantive change, effective September 1, 1982, by 1981 Ind.Acts, P.L. 270 § 2, and is now found at I.C. 34–1–2–2(1) (Burns Code Ed., Supp. 1982).

evaluated and therefore 'pursued' " Whitehouse's claims against the State and the contractor but "such actions were not brought." In response to the request that Quinn admit he "did not advise . . . Whitehouse . . . by signing [the] release . . . Whitehouse was barred from pursuing any claims against the State . . . or the . . . contractor . . . ." Quinn replied the release "speaks for itself," specifically citing the portion of the release which reads: "I . . . release and forever discharge Michael Vaccarello and any other person, firm or corporation charged or chargeable with responsibility or liability" for the accident.[2]

Additionally, Whitehouse filed an affidavit in opposition to summary judgment in which he stated he was advised (he did not say by whom) to sign the November 21, 1978 release and he "was never advised by [Quinn] that by signing the release . . . [he] was releasing all tort-feasors, including the State of Indiana and the highway contractor from liability." The affidavit also asserted Whitehouse "did not learn of the release of the State of Indiana and the highway contractor until [he] talked with an attorney's office [sic] in July, 1980."

After a hearing at which the parties orally presented their respective positions, but where evidence was not taken, the trial judge found the complaint to be governed by the two-year limitation period of I.C. 34–1–2–2 which period began to run on November 21, 1978, the day the release was executed. Consequently, the trial court entered summary judgment for Quinn "on all counts" of Whitehouse's complaint.

Finally we note that in the trial court and on appeal the parties have agreed the state and the contractor were joint tort-feasors with Vaccarello and thus the November 21 release constituted a relinquishment of claims against the state and the contractor as well as Vaccarello.

---

**2.** The entire release was attached as an exhibit to Quinn's motion for summary judgment.

**3.** Ind.Rules of Procedure, Appellate Rule 8.3(A)(7) reads in relevant part: "[e]ach error

## DECISION

At the outset we address Quinn's contention Whitehouse waived all his issues on appeal in view of Ind. Rules of Procedure, Appellate Rule 8.3(A)(7) "by failing to address any particular portion of his argument to any specified part of his Motion to Correct Errors." In other words, Quinn argues the failure to set forth verbatim errors assigned in the motion to correct error at an appropriate point in the argument section of an appellant's brief is fatal.[3]

■ In essence, the argument section of Whitehouse's brief is comprised of two parts, each of which is headed by a declarative statement. Each of these statements reasonably reflects one of the issues Whitehouse seeks to raise on appeal since each statement represents a collation and restatement of several of the issues Whitehouse raised in his motion to correct error, and each statement is followed by pertinent argument. Whitehouse's brief is in substantial compliance with A.R. 8.3(A)(7), and thus, Whitehouse has not waived any of the issues he has otherwise properly raised on appeal. *State Dept. of Admin. v. Sightes,* (1981) Ind.App., 416 N.E.2d 445 (failure to reproduce verbatim in brief errors assigned in the motion to correct error did not constitute waiver where beginning of argument sections stated a concise summary of several assigned errors).

■ It is well settled summary judgment is proper only when a genuine issue of material fact does not exist and the moving party is entitled to judgment as a matter of law. *Criss v. Bitzegaio,* (1981) Ind., 420 N.E.2d 1221 (*citing* Ind.Rules of Procedure, Trial Rule 56(E)); *Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281; *Bassett v. Glock,* (1977) 174 Ind.App. 439, 368 N.E.2d 18; *Letson v. Lowmaster,* (1976) 168 Ind.App. 159, 341 N.E.2d 785. Of course, in reviewing a grant of summary judgment the

---

assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto."

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, are liberally construed in favor of the opponent of summary judgment and any doubt as to the existence of a genuine issue of material fact is resolved against the proponent of the motion. *Teeling v. Indiana Nat'l. Bank,* (1982) Ind.App., 436 N.E.2d 855. Moreover, in summary judgment proceedings, as at trial, the burden of establishing the existence of material affirmative defenses is on the defendant. *Criss,* 420 N.E.2d at 1224–25 (where the court concluded "defendants presented no evidence in support of their allegations" the plaintiff's action to obtain an undivided one-third interest in land by virtue of a resulting trust was barred by the statute of limitations, the doctrine of laches, or the statute of frauds).

### I.

Before proceeding to the merits of the first issue, we emphasize the narrowness of the issue as presented. The motion for summary judgment did not attack the legitimacy of a breach of contract action.[4] Rather, it assumed an action against an attorney based upon that attorney's professional services was exclusively an action for legal malpractice based upon negligence.

Thus, Quinn's motion and its supporting material were only directed to the question whether there were any genuine issues of material fact that both counts of Whitehouse's action for legal malpractice (negligence) were barred, as a matter of law, by the applicable statute of limitation since they had accrued two years before Whitehouse filed it. Also, in its detailed findings the trial court made no mention of the ultimate construction of the contract nor, indeed, of a contract action. Rather, the trial court found Whitehouse's claim was "for legal malpractice" and was "barred as a matter of law" by the "two-year statute of limitations given by Ind.Code 34–1–2–2." Accordingly, our consideration necessarily assumes Count II involves a valid, enforceable contract to prosecute persons other than those specifically named in the contract.

Whitehouse contends count 2 of his complaint is founded on an express written contract, and thus is governed by the twenty-year statute of limitation found at I.C. 34–1–2–2(6) (Burns Code Ed., Supp.1982) as opposed to the two-year personal property statute of limitation provided in the first clause of the same statute.[5] In support of his argument, Whitehouse cites the vintage case of *Foulks v. Falls,* (1883) 91 Ind. 315. Quinn on the other hand urges the essence of Whitehouse's claim, ignoring pleading labels, is for a lost right to receive monies from defendants Quinn failed to sue pursuant to Quinn's representation of him. Thus, Quinn argues Whitehouse's claim is barred by the two-year statute of limitation governing losses of rights and interests in or to personal property according to the rule of *Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281.

*Foulks* involved a suit by Falls against Foulks, as attorney, for failing to collect a note in violation of the parties' agreement.[6] On appeal our supreme court

---

**4.** For example, the terms of the contract, or the interpretation of "and others" were not the subject of attack by the motion for summary judgment. Therefore, the ultimate construction of the contract is an issue for the trial court to resolve on remand given our holding below that Quinn was not entitled to judgment as a matter of law on count 2 (the contract count) of Whitehouse's complaint.

**5.** I.C. 34–1–2–2(6) reads:
"[u]pon contracts in writing other than those for the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record and for the recovery of the possession of real estate, within ten [10] years. However, upon contracts in writing other than those for the payment of money entered into before September 1, 1982, not including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, the action must be commenced within twenty [20] years."

**6.** Foulks represented he was a lawyer to Falls and executed the following document: "Re-

found the "action [was] based upon contract and not tort" since the written instrument taken in its entirety expressed "a contract for the collection of [a] due-bill," even though it contained the elements of a mere receipt. *Foulks,* 91 Ind. at 319. The supreme court also found the instrument expressed an *attorney's* contract for the collection of the bill because Foulks executed the collection contract and received the note while representing himself as an attorney. Thus he impliedly promised to exercise the knowledge and skill of a competent attorney in at least pursuing the ordinary remedies for collection. Proof by oral testimony was unnecessary to establish Foulk's responsibilities in this regard. *Id.* at 320. Proceeding to the statute of limitations issue, the court held:

> "[a] failure in relation to any of these duties would constitute a breach of the contract, upon which an action might be predicated, and, being thus predicated upon a violation of the written contract, it would not be barred by the six years' limitation [pertaining to oral contracts]. If appellant is liable in this action, it must be for a violation of the written contract sued upon."

*Id.* at 321. Thus, a claim predicated upon the nonperformance of an express promise contained in a written attorney-client contract is actionable in Indiana and is governed by the statute of limitation applicable to written contracts. *Id.*

■ In the present case, the second count of Whitehouse's complaint alleged Quinn failed to sue the state and the highway contractor in violation of Whitehouse's written contract with Quinn which expressly provided Quinn would "prosecute [Whitehouse's] claim to final settlement or judgment" "against several defendants includ-

ing Russell A. Toothman, Michael Vaccarello, Kathie K. Christy and others." In effect, the contract was for a specific result—Quinn would "prosecute" "others" to final settlement or judgment. In his responses to Whitehouse's requests that Quinn admit the terms of the parties' contract and admit he "did not pursue a cause of action against either the state or the ... contractor," Quinn specifically admitted the terms of the contract, and conceded he "investigated and evaluated" the alleged claims against the state and the highway contractor but "such actions were not brought." Accordingly, in view of all the materials before the trial court, we conclude the second count of Whitehouse's complaint is predicated upon the nonperformance of a promise contained in a written contract and thus is governed by the applicable twenty-year limitation period of I.C. 34–1–2–2(6).

Our conclusion is consistent with *Shideler v. Dwyer.* In *Shideler* our supreme court noted the general rule that the applicable statute of limitation is not determined by "pleading technicalities" and "labels," but rather by a determination of "the nature or substance of the cause of action." 417 N.E.2d 281, 285–86. We emphasize the attorney-client contract here bears more than a remote or indirect connection with Whitehouse's claim, and the contract is more than a mere link in the chain of evidence needed to state the claim. The written contract on its face contains a promise, the nonperformance of which is the basis and the essence of the claim stated in court 2 of Whitehouse's complaint.[7] Furthermore, the actual limitations holding in *Shideler* does not reach the factual situation in the case at bar. The substance of the plaintiff's claim in *Shideler* was her entitlement to monthly payments of $500 as the beneficiary of a

---

ceived of Mrs. Diana Falls, one note against Z.P. Estes for eleven hundred dollars, having credits of three hundred and sixty-seven dollars; this for collection. H.A. Foulks."

7. Similarly, at common law the breach of a physician-patient contract gave rise to a contract cause of action irrespective of any negligence on the part of the physician. *Coon v. Vaughn,* (1878) 64 Ind. 89, 91. With respect to

health care providers under the Indiana Medical Malpractice Act, no liability shall be imposed on the basis of an alleged breach of contract, assuring the results of any health care procedure, unless the contract is in writing and signed by the health care provider or his authorized agent. I.C. 16–9.5–1–4 (Burns Code Ed., Supp.1982).

will drafted by attorney Shideler; consequently the claim was governed by the two-year period of I.C. 34–1–2–2 for injuries to personal property (injury to a chose in action). *Id.* at 288. Unlike Whitehouse, the *Shideler* plaintiff was not the defendant attorney's client, let alone a party to a written contract with the attorney which contained an express promise the nonperformance of which formed the basis of the claim. Accordingly, we conclude the trial court erred in finding Quinn was entitled to summary judgment as a matter of law on Whitehouse's contract claim, and we reverse the judgment on this issue.

## II

Next Whitehouse contends the statute of limitation applicable to his negligence claim (count 1) was tolled by Quinn's fraudulent concealment of his negligence in that Quinn failed to advise Whitehouse of the release's legal effect of discharging the state and the contractor from liability. Quinn argues, *inter alia,* any nondisclosure or constructive fraud ceased tolling the limitation period when his attorney-client relationship with Whitehouse ended on November 21, 1978, the day the release was executed.

 Generally, the party pleading a statute of limitation has the burden of proving the action was initiated beyond the statutorily allowed time. *H.W.K. v. M.A.G.,* (1981) Ind.App., 426 N.E.2d 129; *Sullivan v. O'Sullivan,* (1959) 130 Ind.App. 142, 162 N.E.2d 315; Ind. Rules of Procedure, Trial Rule 8(C).[8] Statutes of limitation are subject to avoidance, under certain circumstances, *Shideler v. Dwyer,* one of which is by equitable estoppel due to fraudulent concealment. *Guy v. Shuldt,* (1956) 236 Ind. 101, 138 N.E.2d 891. However, a party who relies on facts in avoidance of a statute of limitation has the burden of proving (burden of persuasion) these facts. *D.E.F. v. E.M.,* (1977) 173 Ind.App. 274, 363 N.E.2d 1030; *Sullivan; see Hinds v.*

*McNair,* (1955) 235 Ind. 34, 129 N.E.2d 553; 51 Am.Jur.2d *Limitation of Actions* § 485 (1970). Furthermore, because the burden of establishing a factual basis for a material affirmative defense is on the defense's proponent in summary judgment proceedings, as at trial, *Criss; Henry B. Gilpin Co. v. Moxley,* (1982) Ind.App., 434 N.E.2d 914, we hold that in summary judgment proceedings once the affirmative defense of the statute of limitations has been presumptively established the burden of establishing the existence of material facts in avoidance is on the avoiding party whether or not the avoiding party is the proponent of summary judgment. *See Criss.* Of course, the affirmative defense of the statute of limitations is presumptively established in summary judgment proceedings when the materials properly before the trial court show there is no genuine dispute the action was initiated beyond the permissible statutory time.

In the present case the undisputed facts before the trial court show Whitehouse filed the present action on August 13, 1981. The release of all parties was executed on November 21, 1978 and the parties agree it relinquished all claims Whitehouse had against the state and the contractor arising from the accident. Accordingly, Quinn presumptively established his statute of limitations defense because Whitehouse's negligence complaint for the lost right to receive money from the state and the contractor (lost chose in action) was filed over two years following the execution date of the release of all claims (accrual). *Shideler* (negligence claim for a lost chose in action constitutes a claim for injury to and an interest in or to personalty governed by the two year personal property limitation in I.C. 34–1–2–2).[9] Thus it was incumbent upon Whitehouse to establish a genuine issue of material fact regarding avoidance which he attempted to do by alleging the statute was tolled by Quinn's nondisclosure of the legal effect of the release.

---

**8.** Of course, this burden may be met by evidence presented by the other party. *Ferdinand Furniture Co., Inc. v. Anderson,* (1980) Ind. App., 399 N.E.2d 799.

**9.** For a criticism of *Shideler, see* MacGill, *Shideler v. Dwyer: The Beginning of Protective Legal Malpractice Actions,* 14 Ind.L.Rev. 927 (1981).

In *Guy v. Shuldt,* (1956) 236 Ind. 101, 138 N.E.2d 891, the supreme court discussed the parameters of the doctrine of fraudulent concealment as applied to the statute of limitations. In *Guy,* a physician malpractice case, the court stated "where the fraud is of a continuous character and active concealment continues to exist" the cause of action "accrues when the plaintiff first learns of the wrong." *Id.* at 109, 138 N.E.2d at 895. In other words, active or affirmative misconduct on the part of the defendant which conceals a malpractice action from the plaintiff tolls the statute of limitation until the plaintiff discovers the wrong. Additionally, the *Guy* court declared constructive or passive fraud operates to toll the statute where a fiduciary relationship exists and the fiduciary fails to disclose material information to his charge, such nondisclosure constitutes concealment. *Id.* However, the court also observed:

"[W]here the duty to inform exists by reason of a confidential relationship, when that relationship is terminated the duty to inform is also terminated; concealment then ceases to exist. *After the relationship of physician and patient is terminated the patient has full opportunity for discovery and no longer is there a reliance by the patient nor a corresponding duty of the physician to advise or inform. The statute of limitations is no longer tolled by any fraudulent concealment and begins to run."* (Our emphasis).

*Id.*

Moreover, *Guy* concluded, in order for the plaintiff to obtain avoidance of the statute of limitations on the basis of fraud, he must, in fact, have been ignorant of the fraud *and* have been unable to have discovered it by reasonable diligence. *Id.* at 110, 138 N.E.2d at 896. We find the tolling principles enunciated in *Guy* as to the doctor-patient relationship apply with equal force to the attorney-client relationship; consequently, *Guy* controls the present fraudulent concealment tolling issue.

Whitehouse has confined his fraudulent concealment allegations to Quinn's nondisclosure of the release's effect, and thus the issue before us is narrowed to constructive fraud.

The evidence on this issue consists of Whitehouse's statement in his affidavit Quinn did not inform him of the legal effect of the release, and he did not discover the release's import until he spoke with another attorney in July 1980 (thirteen months prior to his filing the present suit). However, the record is devoid of any evidence regarding the termination date of the Whitehouse-Quinn relationship, as well as any evidence why Whitehouse ought not to have discovered the effect of the release earlier than he did. We conclude, therefore, Whitehouse failed to meet his burden of establishing a material question of fact of avoidance on the basis of constructive fraud because he did not show the statute continued to be tolled after the release date due to the continuation of the attorney-client relationship with Quinn. Further, he failed to meet his burden of showing reasonable diligence in discovering the release's effect as the only evidence he produced on this point was the naked assertion in his affidavit he did not discover the release's effect until July 1980. Such a fact standing alone is insufficient to establish a genuine issue of material fact regarding reasonable diligence. Accordingly, we affirm the trial court's judgment in favor of Quinn on count 1 of the complaint.

The judgment for Quinn on count I is affirmed. The judgment for Quinn on count II is reversed and cause remanded for further proceedings thereon. One-half of the costs ordered assessed to appellant, one-half to appellees.

BUCHANAN, C.J., and SULLIVAN, J., concur.