**KEYSTONE DISTRIBUTION PARK, an Indiana General Partnership, Glen O. Hamilton, Peter K. McDonough, and David Peebles, Plaintiffs-Appellants,**

v.

**KENNERK, DUMAS, BURKE, BACKS, LONG, AND SALIN, a Professional Corporation, and William Salin, Defendants-Appellees.**

No. 4–682 A 143.

Court of Appeals of Indiana,
Fourth District.

April 10, 1984.

M. Robert Benson, Ronald E. James, Sowers & Benson, Fort Wayne, for plaintiffs-appellants.

Leonard E. Eilbacher, Mark W. Baeverstad, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for defendants-appellees.

GARRARD, Judge (writing by designation).

Keystone Distribution Park, Glen O. Hamilton, Peter K. McDonough and David Peebles (a partnership and its three individual partners, collectively referred to as Keystone) are appealing from the summary judgment granted in favor of William Salin and the law firm of Kennerk, Dumas, Burke, Backs, Long & Salin (collectively referred to as Salin). Keystone brought this action in three legal paragraphs to recover damages allegedly caused by legal malpractice, breach of contract, and constructive fraud. The trial court, evidently agreeing with Salin's argument that all three causes of action were in reality merely different labels affixed to a single charge of attorney malpractice, granted Salin's motion for summary judgment on the ground that the entire action was barred by the applicable two year statute of limitations. We affirm.

## FACTS

In concert with our summary judgment standard of review, we look at the facts most favorable to Keystone, the nonmovant. It appears that in the spring of 1978, Salin agreed to assist in procuring an issue of Economic Development Bonds for Keystone in order that it would receive certain favorable tax benefits when financing the construction of two warehouses. The evidence is conflicting regarding certain facts, but it is clear that the bonds were issued only for one warehouse because the other was prematurely started. As a result, Keystone suffered monetary damages and sought to assign the responsibility therefor to Salin.

Keystone filed its original complaint on March 25, 1981, sounding solely in legal malpractice. It later amended its complaint by adding counts for breach of contract and constructive fraud. Salin filed its motion for summary judgment before Keystone's complaint was amended and renewed it thereafter, asserting the action was barred by the two year statute of limitations applicable to attorney malpractice actions. It claimed Keystone's action accrued on July 27, 1978, when the ill-timed construction began with Salin's blessing, or at the very latest, on March 9, 1979, when one of Keystone's partners was shown to have become aware of the problem. Thus,

because the complaint was not filed until March 25, 1981, the claim was beyond the two year limitation. The trial court granted Salin's motion.

## DECISION

■ After our Supreme Court's decision in *Shideler v. Dwyer* (1981), Ind., 417 N.E.2d 281, there seems to be no question but that Keystone's count alleging attorney malpractice was properly dispensed with by summary judgment. Pursuant to *Shideler* it appears that Keystone's claim occurred on June 27, 1978, when Keystone began construction pursuant to Salin's approval. Thus, the claim was barred by the two year statute of limitations. IC 34–1–2–2.

■ Keystone asserts that, even so, its claim that Salin breached an oral contract should be permitted to stand as suits upon oral contracts are subject to a six year limitation. *See* IC 34–1–2–1. We disagree. The substance of the claim is surely malpractice. Pursuant to the analysis and holding in *Shideler*, this court was also subject to the two year limitation of IC 34–1–2–2 and summary judgment was properly entered. In so holding, we acknowledge the Second District's decision in *Whitehouse v. Quinn* (1982), Ind.App., 443 N.E.2d 332 (transfer pending). In that case the court reversed a summary judgment upon the contention that a claim for breach of a written contract was arguably pleaded, and in that event the claim was subject to the twenty-year statute of limitations contained in IC 34–1–2–2(6). We express serious reservations about the *Whitehouse* holding, in view of the court's analysis in *Shideler*, but more to the point the *Whitehouse* court indicated that it was recognizing a narrowly drawn exception based upon an express promise set forth in the written contract. 443 N.E.2d at 337. We believe that *Whitehouse* should be restricted to its facts. In the instant case the "verbal contract" to employ the attorney and the attorney's alleged failure to perform allege, in essence, the tort of legal malpractice. The claim was governed by the two year statute.

■ Keystone further contends that the statute of limitations was tolled by Salin's fraudulent concealment of the problem with the bond issue vis-a-vis the early construction. *See, e.g., Guy v. Schuldt* (1956), 236 Ind. 101, 138 N.E.2d 891; *Whitehouse v. Quinn, supra.* However, even when indulging in our standard of review by viewing the testimony most favorable to the nonmovant in a summary judgment question, the burden of avoiding a statute of limitations ruling here is on Keystone. *See Whitehouse v. Quinn, supra.* One of those burdens is to show that it used reasonable care and diligence to discover the injury Salin's alleged malpractice caused. *See Morgan v. Koch* (7th Cir. 1969), 419 F.2d 993; *Guy v. Schuldt, supra; Colbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000; *Whitehouse v. Quinn, supra.* We believe that as soon as one of Keystone's partners was told by Salin, on or around March 9, 1979, there might be a problem, Keystone should have used due diligence to make further inquiries, especially when there is testimony Keystone contacted another well-known law firm to confirm the bond issue would be denied when Salin actually told it so in early April 1979. Failure to use due diligence and to so establish here forces us to conclude the statute of limitations commenced, at the very latest, on March 9, 1979. The action filed March 25, 1981 was too late and therefore properly disposed of by ruling in Salin's favor on its motion for summary judgment.

■ According to Keystone's appellate brief, its third and last count in the complaint alleges constructive fraud, an action typically governed by the six-year statute of limitations found in IC 34–1–2–1. Keystone contends it notified Salin in August 1978 that it had incurred $30,000 worth of construction expenses. By failing to notify Keystone at that time of the problems with the bond issue, Salin allowed Keystone to expend an additional $70,000 through September 1978 without knowledge that favor-

able financing was not forthcoming. However, we believe this allegation to actually be a claim of attorney malpractice falling within the applicable two year statute of limitations. The event precipitating the alleged fraud is the failure to perform properly within the attorney-client relationship. This falls within the prohibition set forth in *Shideler v. Dwyer, supra,* disallowing several actions which are nominally different yet substantively the same. Keystone has set forth in this count merely one example of the asserted attorney malpractice it alleged before. We disallowed that action as being beyond the statute of limitations and must do the same to this count as being of the same ilk.

We therefore affirm the trial court's grant of summary judgment.

HOFFMAN, J., concurs.

MILLER, J., dissents and files separate opinion.

MILLER, Judge, dissenting.

I respectfully dissent on the basis of the two following theories.

First, I believe the majority has clearly erred in its analysis of the claim based on breach of contract. The Supreme Court's opinion in *Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281, does not address the contractual relationship between an attorney and his client. Rather, the court determined the *substance* of the plaintiff's complaint sounded in attorney malpractice, which thereby negated its *form* as a breach of contract action. Such is not the case here.

In the instant action, Keystone (the plaintiff) clearly alleged Salin had made an express oral agreement to procure a bond issue and had failed to do so. We believe this situation aligns itself more closely with *Whitehouse v. Quinn,* (1982) Ind.App., 443 N.E.2d 332, *trans. pending,* where the foregoing would be treated as a breach of contract. In *Whitehouse,* this court was presented with a written attorney-client agreement. Judge Shields, speaking for the majority, said: "[A] claim predicated upon the nonperformance of an express promise contained in a written attorney-client contract is actionable in Indiana and is governed by the statute of limitation applicable to written contracts." *Id.* at 337. Contrary to the majority's assertion here, I do not believe the principle of *Whitehouse* can be confined to only written contracts but must be read as the condonation of actions based on *express promises.* And, "[a]n express contract is one whose terms are stated either *orally* or in writing." *Jackson v. Creek,* (1911) 47 Ind.App. 541, 94 N.E. 416, 418 (emphasis added); *A.J. Yawger & Co. v. Joseph,* (1915) 184 Ind. 228, 108 N.E. 774. As Keystone's claim is based on an oral promise, the six-year statute of limitations on unwritten contracts in IND.CODE 34–1–2–1 applies, making summary judgment based on a two-year limit unjustified.

I firmly believe the majority's contrary ruling will be grossly injurious to a fundamental tenet of Indiana law:

> "In some cases [the tort] ground of liability may coexist with a liability on contract towards the same person, and arising (as regards the breach) out of the same facts."

*Flint & Walling Mfg. Co. v. Beckett,* (1906) 167 Ind. 491, 79 N.E. 503, 506; *Shriner v. Union Federal Savings & Loan Ass'n.,* (1955) 126 Ind.App. 454, 125 N.E.2d 168, *trans. denied.* This principle has been particularly potent in recent actions upon contracts for personal services. *See, e.g., Wilson v. Palmer,* (1983) Ind.App., 452 N.E.2d 426 (title company); *Essex v. Ryan,* (1983) Ind.App., 446 N.E.2d 368 (surveyor). Our supreme court stated the rationale as follows:

> "'In every situation where a man undertakes to act or to pursue a particular course he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation or by any agent for which he is responsible.'"

*Flint & Walling Mfg. Co. v. Beckett,* 79 N.E. at 506.

"Where the duty has its roots in contract, the undertaking to observe due care may be implied from the relationship, and should it be the fact that a breach of the agreement also constitutes such a failure to exercise care as amounts to a tort, the plaintiff may elect, as the common-law authorities have it, to sue in case or in assumpsit."

*Id.* at 505. I do not perceive why attorney-client contracts should be treated differently than other service contracts in this respect and throw my allegiance to the reasoning of *Whitehouse* rather than the majority here. Granted, this could create greater liability for attorneys than for doctors, by virtue of the longer statute of limitations. However, until attorneys can obtain, as has the medical profession, a special two-year statute of limitations (*see* IND.CODE 16–9.5–3–1), they must continue to be governed by contract law as all other professions are. (This, of course, does not constrain an attorney from expressly limiting his contractual liability).

My conclusion does not intimate the actual existence of a contractual agreement or the terms thereof. All I have decided is that summary judgment is an inappropriate disposition for this case where Keystone has alleged the existence of a contract and its terms could affix the liability for the problems with the bond issue upon Salin. I find this result particularly compelling, especially in light of my second basis for reversal: Salin himself denies the existence of any attorney-client relationship whatsoever,* thus perhaps leaving the trial court with a simple contract for services as pleaded in Keystone's amended complaint. The breach of such does not raise the problems involved with an attorney malpractice action such as asserted in the majority's opinion. Salin himself has thereby presented a question of fact, and summary judgment is inappropriate. I would reverse and remand on this issue but agree with the majority opinion in all other respects.

---

* It is fundamental that, in a summary judgment proceeding, the burden of establishing there is no genuine issue of material fact is upon the movant. *Protective Ins. Co. v. Coca-Cola Bottling Co.,* (1981) Ind.App., 423 N.E.2d 656. Here, Salin had the burden, even under the majority's reasoning, of showing that he had indeed been laboring under an attorney-client relationship and thereby had entered an attorney-client contract. On the contrary, the depositions in the record revealed a heated dispute as to such a relationship, with Salin himself insisting he merely worked for the Economic Development Commission but did not represent applicants thereto. Record, pp. 248, 256. We must assume he treated Keystone as just such an applicant, thereby negating any inference of an attorney-client relationship with Keystone. (To do otherwise could, of course, raise serious ethical questions about Salin's employment as city attorney and his representation of private clients trying to obtain bond issues. This precise problem was placed before the court by newspaper items attached to an affidavit filed with Keystone's response to Salin's motion for summary judgment.) Thus, Salin has failed in his burden with regard to the factual issue of the existence of an attorney-client relationship.